THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDAL CLARK, Defendant-Appellant.

Third District   No. 3—85—0569

Opinion filed May 30, 1986.—Rehearing denied July 8, 1986.

Robert Agostinelli and Pamela Peters, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Following the denial of his motion to suppress, defendant, Randal Clark, was found guilty at a stipulated bench trial of possession with intent to deliver of more than 30 grams of cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)). He was sentenced to the minimum term of six years' imprisonment and fined $4,960, the street value of the cocaine. We reverse both the conviction and the fine.

Following the surveillance of a middleman selling cocaine to an undercover policeman, it was determined that defendant was the middleman's supplier. In the initial transactions, the middleman would meet the policeman at a site near defendant's house. The middleman would have the cocaine with him and the policeman would purchase it with prerecorded currency. The transactions increased in size. The final transaction was different from the others in that defendant would not "front" the cocaine to his middleman; the latter had to buy it from defendant for resale to the policeman. The transaction also was different in that it took place a few miles from defendant's house. The middleman was arrested as a result of this sale.

Fifteen minutes after the arrest of the middleman, a team of officers from the Metropolitan Area Narcotic Squad (M.A.N.S.) and the New Lenox police department executed a previously obtained search warrant for defendant's house (there is no issue in this case as to the validity of the warrant). Between 6 to 10 officers pulled up to defendant's house on a quiet residential street in an unmarked van. The officers wore M.A.N.S. windbreakers and caps which apparently indicated

that they were policemen. The officers took a battering ram and blasted defendant's front door open while announcing their authority. Defendant testified that he was sitting in his living room when he heard what he thought was a gas explosion. Defendant, hobbled by a broken leg, was pushed to the floor with a shotgun at his head. The police found approximately 49.6 grams of cocaine in the house.

Defendant argues here as he did below that the failure of the officers to signify their presence and indicate their authority before invading the premises constitutes a fourth amendment violation. The trial court disagreed, holding that there were exigent circumstances which excused the necessity of notifying defendant before entering.

■■ We begin by rejecting out of hand the State's suggestion that we affirm the trial court because the manner in which a valid search warrant is executed is not subject to fourth amendment limitations. The fourth amendment protects against *all* unreasonable searches and seizures. While it is not a *per se* constitutional violation to fail to announce authority prior to executing a valid warrant, it may influence whether subsequent entry to arrest or search is reasonable. (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067.) Thus, our supreme court has already determined that there is some constitutional protection against improperly executed warrants.

■■ In *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507, the court held that where exigent circumstances were present, it was not a constitutional violation for the police to fail to knock and announce their authority. In so holding, the court refused to apply a blanket rule excusing such a requirement where the things to be seized are easily disposable narcotics. Instead, the nature of the object of the warrant is but one of a number of circumstances to be considered in examining the reasonableness of means of entry. Among the other factors to be taken into account are the danger to police officers, the probability of escape by the defendant and whether it would be a useless gesture to knock and announce authority. (*People v. Seybold* (1981), 98 Ill. App. 3d 236, 423 N.E.2d 1132.) We also note that there may be additional relevant circumstances depending upon the unique facts of each case.

In finding exigent circumstances, the court relied upon the following: (1) that the drug being sought was cocaine, which is easy to dispose of; (2) that defendant might be on alert since Meyers did not return immediately after consummating the transaction; (3) that the officers had information that there was a weapon in the house; and (4) that the van pulling up to defendant's home in a quiet residential neighborhood with several jacketed officers would have alerted defend-

ant that a search was forthcoming.

■ The trial court found that the facts were undisputed. We concur in this finding. Consequently, the case turns on the legal conclusion that exigent circumstances were present. Where a person's constitutional rights turn on a legal conclusion arising from undisputed facts, it is the duty of a reviewing court to come to its own conclusions. *Miller v. Fenton* (3d Cir. 1984), 741 F.2d 1456.

■ We believe the finding of exigent circumstances to be erroneous. While it is the case that cocaine was the object of the search warrant, this alone cannot constitute exigent circumstances. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 519, 401 N.E.2d 507.) This is particularly true where there is no indication that the cocaine was located so as to be instantaneously disposable. See *State v. Harris* (1975), 12 Wash. App. 481, 530 P.2d 646.

■ As to the presence of a weapon, this normally constitutes an exigent circumstance, especially if there is an outstanding arrest warrant for the defendant for a violent crime. (2 W. LaFave, *Search and Seizure* 6—37 (1978).) The facts in the instant case, however, do not strongly support such a finding. Although the police had some sketchy information that defendant had a gun or guns on the premises, there was no reason to believe that he had ever used the gun or that he usually carried it on or about his person. There is nothing to support the conclusion that there was any danger from weapons which would necessitate an unannounced, forcible entry.

■ Similarly, we do not believe that the manner in which the officers approached defendant's house can support a finding of exigent circumstances. If such action alone could constitute an exigent circumstance, then the police could effectively circumvent the duty to knock and announce their authority by approaching the subject premises with a notorious and vociferous display.

■ Finally, the court appears to have erred in attaching significance to the failure of the middleman to return immediately after the sale. To begin with, assuming the last transactions were to be carried out in the same manner as the others, how would defendant know that the middleman's return was immediate or not? The evidence was that defendant would send him out with the cocaine and that he would return immediately after the sale. There was no evidence that the middleman consummated the first sales immediately after receiving the "fronted" cocaine. More to the point, in the final and relevant sale, the middleman had already purchased the cocaine from defendant. Defendant had his money already. Hence, there was no reason for the middleman to return immediately or at all.

12

■ Consequently, only two legitimate factors remain. Using a "totality of the circumstances" approach, we cannot agree with the trial court. As noted previously, the character of the object of the search cannot alone constitute an exigent circumstance. On the presence of weapons, we noted that this was a minor factor at best here. Moreover, since the two remaining factors relate to different concerns (destruction of evidence versus danger to the police officers), it makes little sense to combine them to create a more exigent set of circumstances than either factor alone could.

■ Along with the absence of exigent circumstances, we find that the patently unreasonable method of entry is additional evidence of a fourth amendment violation. The so-called "knock and announce" rule does not exist in a vacuum; neither is it a creation of misguided libertarians. The rule serves the dual salutary purposes of avoiding violence and protecting personal privacy. (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067.) Where, as here, the police exhibit a blatant disregard for these concerns, we do not hesitate to suppress the fruits of this ill-begotten escapade.

Accordingly, defendant's conviction and, *ipso facto*, his sentence and fine are reversed. We remand for further proceedings consistent with the findings in this opinion.

Reversed and remanded.

BARRY and WOMBACHER, JJ., concur.